```
TARA K. MCGRATH
United States Attorney
LAWRENCE A. CASPER
California Bar No. 235110
Assistant United States Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6734
Email: Lawrence.Casper@usdoj.gov

Attorneys for United States of America
```

FILED
AUG 20 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>  v.<br><br>DOUGLAS P. SOOLEY,<br><br>      Defendant. | Case No. 3:24-cr 01689-JES<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Tara K. McGrath, United States Attorney, and Lawrence A. Casper, Assistant United States Attorney; Margaret Moeser, Chief of the United States Department of Justice Money Laundering and Asset Recovery Section, and Joseph Palazzo, Trial Attorney, Money Laundering and Asset Recovery Section; and Defendant DOUGLAS P. SOOLEY, with the advice and consent of Charles L. Rees, counsel for Defendant, as follows:

### I

### THE PLEA

A.   THE CHARGES

Defendant agrees to waive indictment and plead guilty to a one Count Information charging Defendant with Conspiracy to Launder

Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h), as follows:

> Beginning on or about November 3, 2018, and continuing to at least February of 2022, within the Southern District of California, and elsewhere, the defendant, DOUGLAS P. SOOLEY, did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to commit the following offense against the United States:
>
> a. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and
>
> b. to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957;
>
> and the aforementioned specified unlawful activity being wire fraud, in violation of Title 18, United States Code, Section 1343; all in violation of 18 U.S.C. § 1956(h).

If Defendant breaches this agreement or the guilty plea is set aside, Section XII below shall apply.

B.  FORFEITURE

Defendant agrees that by pleading guilty to the one Count Information, the United States is entitled to forfeit all property, real and personal, involved in, or traceable to property involved in, the commission of Count One, all pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2)(A), and 982(b), and 28 U.S.C. § 2461(c).

C.  PRE-TRIAL DISPOSITION

Defendant agrees that, following entry of Defendant's guilty plea, the United States need not hold or preserve any evidence seized in connection with this case, including but not limited to all electronic devices, papers, bank documents, and records.

## II

## NATURE OF THE OFFENSES

A.  ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

Count One: Conspiracy to Launder Monetary Instruments

The elements for Conspiracy to Launder Monetary Instruments are as follows:

  1. There was an agreement to commit money laundering;
  2. Defendant knew the objective of the agreement; and

Defendant joined the agreement with the intent to further its unlawful purpose. The elements for the two substantive crimes that are the objects of the conspiracy set forth in the one Count Information are as follows:

a. Transporting and Attempting to Transport Monetary Instruments for the Purpose of Laundering (18 U.S.C. § 1956(a)(2)(B))

1. Defendant transmitted, transported or attempted to transmit or transport, money from a place in the United States to and through a place outside the United States, or to a place in the United States from or through a place outside the United States;
2. Defendant knew that the money represented the proceeds of some form of unlawful activity;
3. Defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity; and
4. Defendant did something that was a substantial step toward committing the crime.

b. Money Laundering (18 U.S.C. § 1957)
1. Defendant knowingly engaged or attempted to engage in a monetary transaction;
2. Defendant knew the transaction involved criminally derived property;
3. The property had a value greater than $10,000;
4. The property was in fact derived from the specified unlawful activity, to wit, wire fraud, alleged in the Information; and
5. The transaction occurred in the United States.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime he is pleading guilty to and admits that there is a factual basis for his

guilty plea. The following facts are true and undisputed:

Count One: Conspiracy to Launder Monetary Instruments

1. Beginning on or about November 3, 2018, and continuing to at least February of 2022, within the Southern District of California and elsewhere, there was an agreement between two or more persons to launder monetary instruments, that is,

   a. to transmit and transfer, and attempt to transmit and transfer, funds from a place in the United States to a place outside the United States, and to a place in the United States from a place outside the United States, knowing that the funds involved in the transmission and transfer represented the proceeds of some form of unlawful activity and knowing that such transmission and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity; and

   b. to knowingly engage in monetary transactions in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, and affecting interstate commerce.

2. Defendant joined the agreement knowing these objects and intending to help accomplish them.

3. Defendant was self-employed and operated an online business known as Hypergalaxy, also doing business as Caldia Technologies, from his residence in the Southern District of California. Defendant entered into an agreement with another person to perform computer services and which also included the transfer of money from outside the United States into Defendant's accounts in the United States. While Defendant did not know all of the details of the scheme, Defendant knew that the money he agreed to transfer was proceeds of unlawful activity and that such transfer was designed to disguise the true source, ownership, and control of the proceeds. Defendant agrees that the facts set forth herein establish his participation in a money laundering scheme.

4. As part of the illegal money laundering scheme, Defendant created other corporate entities at the direction of co-conspirators, including Edgesight Tech Inc and Genesis Tech

Pro Inc. Each of Defendant's home business entities held multiple bank accounts in the Southern District of California with Defendant as account signatory, including accounts fully identified to the United States Attorney but known herein as Account_5987 and Account_6317.

5. As part of the illegal money laundering scheme, Defendant's bank accounts, including but not limited to Account_5987 and Account_6317, received millions of dollars from individuals and companies to whom Defendant sold no goods and provided no services. Instead, Defendant used his bank accounts to collect unlawful proceeds that Defendant then wire transferred overseas in exchange for a fee from co-conspirators. The recipients of Defendant's foreign wire transfers, typically general trading companies in the United Arab Emirates, did not sell or provide any goods or services to Defendant in exchange for the wire transfers.

6. For example, on or about December 22-24, 2020, Defendant made the following wire transfers to Dubai, United Arab Emirates, at the direction of co-conspirators and in exchange for no goods or services from the recipients:

|    | Approx. Date | Approx. Amount | Originator (S.D. Cal.) | Beneficiary (Dubai, UAE) |
|----|---|---|---|---|
| a. | | | | |
| b. | 12/22/20 | $28,640 | Genesis Tech Pro Inc | Company A |
| c. | 12/22/20 | $10,070 | Genesis Tech Pro Inc | Company A |
| d. | 12/22/20 | $20,370 | Genesis Tech Pro Inc | Company A |
| e. | 12/23/20 | $26,020 | Edgesight Tech Inc | Company B |
| f. | 12/23/20 | $21,380 | Genesis Tech Pro Inc | Company A |
| g. | 12/23/20 | $12,140 | Genesis Tech Pro Inc | Company A |
| h. | 12/24/20 | $18,390 | Genesis Tech Pro Inc | Company C |
| i. | 12/24/20 | $21,730 | Genesis Tech Pro Inc | Company C |
| j. | 12/24/20 | $16,130 | Genesis Tech Pro Inc | Company D |
| k. | 12/24/20 | $15,730 | Genesis Tech Pro Inc | Company E |

7. As part of the illegal money laundering scheme, Defendant's Account_6317 in the name of Hypergalaxy received approximately $2 million of the proceeds of this fraud from three co-conspirators fully identified to the United States Attorney, but known herein as Co-conspirator K.H., Co-conspirator J.C., and Co-conspirator J.M.

8. The approximately $2 million of fraud proceeds from Co-conspirator K.H., Co-conspirator J.C., and Co-conspirator J.M. were wire transferred by Defendant to co-conspirator bank accounts in the United Arab Emirates, as well as to a

credit card account in the United States controlled by co-conspirators.

9. An individual fully identified to the United States Attorney, but known herein as Individual A, was defrauded into purchasing fake academic credentials online. Defendant was not specifically aware of Individual A and did not have any communication with Individual A. However, as part of the fraud scheme, Individual A was instructed to wire transfer payments to Edgesight Tech Inc at Account_5987.

   a. From approximately March 5, 2020, through approximately May 12, 2020, Individual A conducted a series of nine wire transfers, totaling at least $8,000, to Edgesight Tech Inc at Account_5987.

   b. Neither Defendant nor Edgesight Tech Inc provided any goods or services in exchange for Individual A's payments, and Defendant knew that Individual A's payments were proceeds of unlawful activity.

   c. At the instruction of co-conspirators, Defendant pooled Individual A's payments with another $60,000 of fraud proceeds collected in Account_5987, and then wire transferred the entire amount to co-conspirator bank accounts located in the United Arab Emirates.

   d. The wire transfers to the United Arab Emirates were disguised in bank transfer documents as payments for commercial business activity that did not actually take place.

   e. At the instruction of co-conspirators, Defendant also pooled Individual A's payments with another $20,000 of fraud proceeds collected in Account_5987, and then wire transferred the entire amount to a credit card account in the United States controlled by co-conspirators.

10. An individual fully identified to the United States Attorney, but known herein as Individual B, was defrauded into purchasing fake academic credentials online. Defendant was not specifically aware of Individual B and did not have any communication with Individual B. However,

Plea Agreement         7         Def. Initials ____

24CRXXXX

as part of the fraud scheme, Individual B was instructed to wire transfer payments to Edgesight Tech Inc at Account_5987.

a. From approximately February 6, 2020, through approximately May 29, 2020, Individual B conducted a series of seven wire transfers, making payments totaling $21,000, to Edgesight Tech Inc at Account_5987.

b. Neither Defendant nor Edgesight Tech Inc provided any goods or services in exchange for Individual B's payments, and Defendant knew that Individual B's payments were proceeds of unlawful activity.

c. At the instruction of co-conspirators, Defendant pooled Individual B's payments with another $125,000 of fraud proceeds collected in Account_5987, and then wire transferred the entire amount to co-conspirator bank accounts located in the United Arab Emirates.

d. The wire transfers to the United Arab Emirates were disguised in bank transfer documents as payments for commercial business activity that did not actually take place.

e. At the instruction of co-conspirators, Defendant also pooled Individual B's payments with another $35,000 of fraud proceeds collected in Account_5987, and then wire transferred the entire amount to a credit card account in the United States controlled by co-conspirators.

### III

### PENALTIES

The crime to which Defendant is pleading guilty carries the following penalties:

Count One: Conspiracy to Launder Monetary Instruments

A.   a maximum 20 years in prison;

B. a maximum $500,000 fine or twice the value of the funds involved in the transportation or transmission, whichever is greater;

C. a mandatory special assessment of $100 per count;

D. a term of supervised release of not more than three years Defendant understands that failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release;

E. forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

In addition, Defendant may be subject to an order of restitution to victims of the offense.

## IV
## DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A. Continue to plead not guilty and require the United States to prove the elements of the crimes beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F. Not testify or have any adverse inferences drawn from the failure to testify.

## V
## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutors in this case has been turned over to Defendant. The United States will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the United States would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the United States would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI
## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

    C.    No one has threatened Defendant or Defendant's family to induce this guilty plea.

    D.    Defendant is pleading guilty because Defendant is guilty of the charged crime and for no other reason.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA AND UNITED STATES DEPARTMENT OF JUSTICE MONEY LAUNDERING AND ASSET RECOVERY SECTION

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and the United States Department of Justice Money Laundering and Asset Recovery Section and cannot bind any other authorities in any type of matter, although the United States will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the United States Probation Office and defense counsel and the United States have an opportunity to review and challenge the presentence report. Defendant agrees to request that a present report be prepared. Nothing in this plea agreement limits the United States' duty to provide complete and accurate facts to the United States District Court and the United States Probation Office.

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The United States has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the United States at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

A.  SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1. Base Offense Level [§2S1.1(a)(2)]                                8
2. Loss amount not exceeding $2,000,000 [§2B1.1(b)(1)(I)]     +16
3. Conviction pursuant 18 U.S.C. § 1956 [§2S1.1(b)(2)(B)]      +2
4. Acceptance of Responsibility [§3E1.1]                         -3

B.  ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the United States need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in

conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2. Falsely denies prior criminal conduct or convictions;

3. Is untruthful with the United States, the Court or probation officer;

4. Challenges, appeals, or in any way litigates forfeiture proceedings against the government or against assets previously seized from Defendant in this Federal District and in any other Federal District; or,

5. Breaches this plea agreement in any way.

C. <u>FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553</u>

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The United States may oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

D. <u>NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY</u>

The parties have no agreement as to Defendant's Criminal History Category.

E. <u>"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION</u>

The facts in the "factual basis" paragraph of this agreement are entirely true and may be considered as "relevant conduct" under USSG

§ 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The United States will recommend that Defendant be sentenced to a custodial sentence within the advisory Guidelines range as calculated by the United States at sentencing after recommending and incorporating a variance under 18 U.S.C. § 3553(a) equivalent to **three levels** under the Guidelines.[1]  Defendant may argue for any lawful sentence.

G. SPECIAL ASSESSMENT/FINE/RESTITUTION/FORFEITURE

1. Special Assessment

Parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing.  Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2. Fine

The parties have no agreement regarding a fine.  The United States is free to recommend the imposition of a fine, and Defendant is free to oppose.

3. Restitution

The parties have no agreement regarding restitution.  The United States is free to seek an order of restitution, and Defendant is free to oppose.

---

[1] This variance is in consideration of Defendant's expeditious resolution of the case and full waiver of appeal.

Plea Agreement           14           Def. Initials ___

24CRXXXX

### 4. Forfeiture

The parties agree that Defendant will not challenge, appeal, or in any way litigate the administrative, criminal, or civil forfeiture of Defendant's seized assets in this and any other Federal District. Defendant acknowledges and accepts that certain assets already seized from him, including those described in paragraphs 5a. through 5k. on pages 5 and 6 of this plea agreement (the seized assets), were lawfully seized by the United States via warrants, and are currently being forfeited in other Federal Districts such as 2:21-cv-10928-DPH-KGA in the Eastern District of Michigan. Defendant further acknowledges and accepts having received lawful notice of the seizure and the forfeiture of the seized assets in the Eastern District of Michigan. Defendant waives all rights, title, and interest in the seized assets, and admits that the seized assets are personal property subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A), 982(a)(1), and 982(b), and 28 U.S.C. § 2461(c) based on their involvement in money laundering. Defendant further agrees not to assist any other person or entity in contesting the forfeiture of property seized in connection with this case. Assisting others to challenge, appeal, or in any way litigate the forfeiture of the seized assets in any Federal District shall constitute a material breach of the plea agreement, relieving the Government of all its obligations under this plea agreement including but not limited to its agreement to recommend an adjustment for Acceptance of Responsibility.

### H. SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least 2/3 of the term of supervised

release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

## XI

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any forfeiture (in this and any other District), fine, or restitution order. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel.

## XII

### BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the United States has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;

3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement;
7. Challenging, appealing, or in any way litigating forfeiture proceedings against the government or against assets previously seized from Defendant in this Federal District and in any other Federal District; or,
8. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the United States will be relieved of all its obligations under this plea agreement. For example, the United States may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the United States may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the United States may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the United States' pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual

Plea Agreement    17    Def. Initials [signature]
24CRXXXX

basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the United States, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

XV

**DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

TARA K. MCGRATH
United States Attorney

8-15-24
DATED

LAWRENCE A. CASPER
Assistant United States Attorney

8-15-24
DATED

JOSEPH PALAZZO
Trial Attorney
Money Laundering & Asset Recovery Section
United States Department of Justice

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

8-6-24
DATED

CHARLES L. REES
Defense Counsel

8/4/2024
DATED

DOUGLAS P. SOOLEY
Defendant

19

24CRXXXX